UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
LOUIS FERRER and GLEN ALTOMENTE,
Individually and on Behalf of All Other Persons
Similarly Situated,

                           Plaintiffs,                Index No.: 09-cv-4309 (HB)

     -against-

RAINES & WELSH & SONS, INC., RAINES & WELSH &
SONS CONTRACTORS, INC., THOMAS J. WELSH,
DEBORAH WELSH, STEVEN RAINES and JOHN DOES
#1-10, Jointly and Severally,

                           Defendants.
----------------------------------------------------------------------X

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY A FAIR LABOR STANDARDS ACT COLLECTIVE ACTION AND AUTHORIZE NOTICE TO BE ISSUED TO THE CLASS

Dorfman Knoebel Conway & Fury, L.L.P.
Attorneys for Defendants
51 North Broadway
Nyack, New York 10960
(845) 353-3500

Saretsky Katz Dranoff & Glass, L.L.P.
Co-Counsel for Defendants
475 Park Avenue South
New York, New York 10016
(212) 973-9797

# TABLE OF CONTENTS

                                                                                                Pages

Table of Authorities ..................................................................................ii

Preliminary Statement ...............................................................................1

    Plaintiffs Fail to Meet the Standards for Collective Action
    Certification Under 29 U.S.C. §216(b) ..............................................4

        A.      The Applicable Standard Under 29 U.S.C. §216(b) ....................4

        B.      Ferrer and Altomonte have failed to establish that they
            are "similarly situated" to any potential opt-in plaintiffs ..............5

        C.      The Ferrer and Altomonte declarations are replete with
            factually unsupported statements contradicted by the
            defendants' evidence and are therefore inadequate to establish
            that they are "similarly situate" with any potential
            plaintiffs..........................................................................9

        D.      If the court grants certification pursuant to 29 U.S.C.
            §216(b), the terms of any notice should be mutually
            agreed upon by the parties and approved by the Court
            and any preliminary discovery permitted for notice
            purposes should be limited ................................................13

Conclusion ..........................................................................................15

# TABLE OF AUTHORITIES

**CASES**

*Brandy v. Canea Mare Contracting, Inc.*,
34 A.D.3d 512 (2d Dep't 2006) ............................................................................................. 4

*Carter v. Newsday, Inc.*,
76 F.R.D. 9 (E.D.N.Y. 1976) ............................................................................................. 13

*Colozzi v. St. Josephs Hospital Health Center*,
595 F.Supp.2d 200 (N.D.N.Y. 2009) ................................................................................... 8

*Flores v. Osaka Health Spa., Inc.*,
2006 WL 695675 (S.D.N.Y. 2006) ...................................................................................... 5

*Haynes v. Singer Co.*,
696 F.2d 884 (11th Cir. 1983) ............................................................................................. 8

*Johnson v. RGIS Inventory Specialists*,
554 F.Supp.2d 693 (E.D. Tex. 2007) ................................................................................. 11

*Lee v. ABC Carpet & Home*,
236 F.R.D. 193 (S.D.N.Y. 2006) ..................................................................................... 4, 5

*Levinson v. Primedia, Inc.*,
2003 WL 22533428 (S.D.N.Y. 2003) .................................................................................. 8

*Lynch v. United States Auto Ass'n*,
491 F.Supp.2d 357 (S.D.N.Y. 2007) ................................................................................... 4

*Mendoza et al. v. Casa De Cambio Delgado, et al.*,
2008 WL 938584 (S.D.N.Y. Apr. 7, 2008) ............................................................... 4, 5, 6, 8

*Mendoza et al. v. Casa De Cambio Delgado, et al.*,
2008 WL 3399067 (S.D.N.Y. August 12, 2008) .................................................................. 6

*Morales v. Plantworks, Inc.*,
2006 WL 278154 (S.D.N.Y. Feb. 2, 2006) .......................................................................... 4

*Patton v. Thompson Corp.*,
364 F.Supp.2d 263 (E.D.N.Y. 2005) ................................................................................... 5

*Scott v. City of New York*,
592 F.Supp.2d 386 (S.D.N.Y. 2008) ................................................................................. 11

*Sexton v. Franklin First Financial, Ltd.*,
2009 WL 1706535 (S.D.N.Y. June 16, 2009) .................................................................. 14

*Summa v. Hofstra University*,
2008 WL 3852160 (E.D.N.Y. August 14, 2008) ............................................................. 13

*Tucker v. Labor Leasing, Inc.*,
872 F.Supp. 941 (M.D. Fla. 1994) ................................................................................... 13

**STATUTES**

29 U.S.C. § 201 ........................................................................................................................ 1
29 U.S.C. § 216(b) ................................................................................................. 1, 4, 9, 13, 15

**Preliminary Statement**

This is a frivolous action brought by two former employees, Louis Ferrer ("Ferrer") and Glen Altomonte ("Altomonte"),[1] of the defendant Raines & Welsh & Sons, Contractors, Inc. ("R&W"), to recover alleged unpaid wages, overtime compensation, and prevailing wages associated with publicly funded projects, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FSLA"), the New York Labor Law, and asserting various common law claims. Plaintiffs now move to conditionally certify a collective action under § 216(b) of the FLSA arguing that they are "similarly situated" with a limited number of unidentified current and former laborers employed by R&W.

Under well established law, plaintiffs are only entitled to certification if they can establish by the pleadings and affidavits that there exists a factual nexus showing that they and the potential plaintiffs were victims of a common policy or plan that violated the law. As this Court has previously held, the use of boilerplate and virtually identical declarations by the named plaintiffs, like those proffered here by Ferrer and Altomonte, are insufficient to satisfy the nexus. The plaintiffs' declarations are replete with conclusory allegations based upon nothing more than information and belief. To the extent that Ferrer and Altomonte claim to have personal knowledge of alleged FLSA violations involving other potential plaintiffs, with whom they claim to have actually spoken, they fail to identify a single potential plaintiff by name, or to proffer a single affidavit from any potential plaintiff. There are internal inconsistencies between the

---

[1] The spelling of Altomonte's name throughout this memorandum of law is taken from his declaration, which is assumed to be correct, as opposed to the caption of this action in which his name is spelled "Altomente."

allegations in the complaint and the declarations concerning the total numbers of hours per week Ferrer and Altomonte allegedly worked, which allegations are further undermined by the pay stubs annexed to their declarations. Contrary to their claims, their own pay stubs show that Ferrer and Altomonte either worked 40 hours per week or less at their regular hourly pay rate, or on those few occasions when they did work in excess of 40 hours per week, they were compensated at the rate of one and one-half times their hourly rate.

The documentary evidence proffered by the defendants in opposition to plaintiffs' motion demonstrates that virtually all of the allegations made by Ferrer and Altomonte are false, further defeating the existence of any factual nexus between those named plaintiffs and any potential plaintiffs. According to the declaration of Stephen J. Reich, the representative of the union with which R&W has a collective bargaining agreement ("CBA") and contrary to the allegations of Ferrer and Altomonte, employees of R&W generally work from 8:00 a.m. to 4:30 p.m., with ½ hour of time allotted for lunch. According to audits of R&W's payroll records regularly conducted by the union to ensure compliance with the CBA, there are no recorded violations of the CBA concerning unpaid overtime, and R&W has been found to be in full compliance with the CBA.

According to the declaration of Thomas Welsh (R&W's president), there is no truth to the allegation by Ferrer and Altomonte that they and other R&W employees were required to report to work as early as 6:30 am. or 7:00 a.m., or to work past 4:30 p.m. If Ferrer and Altomonte did arrive before 8:00 a.m., they did so of their own choosing and did not engage in any work for the benefit of R&W. Welsh's declaration also demonstrates that the allegations by Ferrer and Altomonte that time records were altered

by R&W to reduce the number of hours worked is completely false. Welsh explains that the person accused by Ferrer and Altomonte of altering time records was not even employed by R&W during the relevant time period.

Because Ferrer and Altomonte have failed to establish that they are similarly situated with the potential plaintiffs, they should not be entitled to Court approved notice to potential plaintiffs, or any notice related discovery from defendants. Should the Court grant certification, and permit notice, it should order the parties to meet and confer to devise a fair and accurate notice agreeable to the parties, subject to Court approval. To the extent that plaintiffs are permitted some discovery for notice purposes, it should be limited to the names and last known addresses of current R&W employees, and those employed by R&W within the past 3 years. Because plaintiffs have not demonstrated any need for additional information in the form of telephone numbers and personal email addresses, defendants should not be obligated to produce such information. For similar reasons, the plaintiffs' request that defendants post any court-ordered notice and opt-in consent forms in all of its facilities should be denied. Plaintiffs have not established that mailing of notice and opt-in consent forms would not serve as adequate notice to any current employees of R&W.

# PLAINTIFFS FAIL TO MEET THE STANDARDS FOR COLLECTIVE ACTION CERTIFICATION UNDER 29 U.S.C. § 216(b)

### A. The Applicable Standard Under 29 U.S.C. § 216(b)[2]

The FLSA allows employees to assert claims on their behalf or on behalf of employees who are "similarly situated." 29 U.S.C. § 216(b). The named plaintiffs must establish that they are "similarly situated" to the proposed members of the class, and proposed class members must "opt in" and consent in writing to being a party to the action. Id. Although the FLSA does not define the standard for "similarly situated," federal courts within the Second Circuit require the named plaintiffs to make a "modest factual showing" that the named plaintiff(s) and potential collective action members were victims of a common policy or plan that violated the law. *Lynch v. United States Auto Ass'n*, 491 F.Supp.2d 357 (S.D.N.Y. 2007); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 196 (S.D.N.Y. 2006). While this is a liberal standard, conclusory allegations made in boilerplate affidavits (like those made here by the named plaintiffs Ferrer and Altamonte), or a failure to establish a nexus with the putative class will prevent the case from moving forward as a collective action. *Morales v. Plantworks, Inc.*, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006); *Mendoza et al. v. Casa De Cambio Delgado, et al.*, No. 07 Civ. 2579, 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008)(Judge Harold Baer)(denying without prejudice motion to certify collective action under FSLA where

---

[2] As indicated in plaintiffs' memorandum of law, the plaintiffs are seeking conditional certification only with respect to their FLSA claims and "will seek certification of the state law class under Rule 23 at a later time." Plaintiffs' MOL at p. 1, fn. 1. Defendants likewise reserve all of their rights to challenge and oppose plaintiffs' purported right to proceed as a class action under Fed. R. Civ. P. 23 in respect of their state law claims, including, but not limited to, the defense that plaintiffs have failed to exhaust administrative remedies in respect of such claims. *See, Brandy v. Canea Mare Contracting, Inc.*, 34 A.D.3d 512 (2d Dep't 2006)(no private cause of action under Article 8 of the Labor Law exists for underpayment of wages unless and until an administrative determination in the employee's favor has been made and has gone unreviewed or has been affirmed.).

4

affidavits of named plaintiffs were "boilerplate and virtually identical" and "failed to provide allegations of the factual nexus between named plaintiffs and other putative class members.").

Courts typically employ a two-part process in certifying a collective action. See *Flores v. Osaka Health Spa., Inc.*, 2006 WL 695675, at *2 (S.D.N.Y. 2006). The court first looks at the pleadings and affidavits to determine whether the class members are similarly situated. *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006). If the court finds that the putative plaintiffs are similarly situated to the named plaintiffs, the court conditionally certifies the class and permits notice to be sent to the proposed plaintiffs. *See Flores*, 2006 WL 695675, at *2.[3]

### B. Ferrer and Altomonte have failed to establish that they are "similarly situated" to any potential opt-in plaintiffs.

As this Court has previously held, the use of "boilerplate and virtually" identical declarations by named plaintiffs will not suffice to meet the plaintiffs' burden of establishing the "factual nexus between the named Plaintiffs and other putative class members" required for certification of a collective action under the FLSA. *Mendoza, supra,* 2008 WL 938584 at * 2. Like the named plaintiffs in *Mendoza*, the declarations proffered by Ferrer and Altomonte are boilerplate and virtually identical. Concerning the other potential class members, Ferrer and Altomonte make the identical conclusory allegations, some of which are based on nothing more than "information and belief." See, ¶ 8 Ferrer and Altomonte Declarations. Even where Ferrer and Altomonte claim to

---

[3] During the second stage, the employer can move to decertify the class if discovery reveals that the plaintiffs are not similarly situated. *Patton v. Thompson Corp.*, 364 F.Supp.2d 263, 266-67 (E.D.N.Y. 2005). The defendants reserve all rights to move to decertify after discovery if this Court grants plaintiffs' conditional motion.

have "personal knowledge" of FSLA wage violations concerning "other persons employed by Defendants as construction laborers who performed the same or similar work," they fail to identify any such laborers by name. See, ¶10 of Ferrer and Altomonte Declarations. Their failure to identify any of the alleged potential plaintiffs by name is particularly inexcusable given the fact that both Ferrer and Altomonte claim to have actually "spoken with numerous other construction laborers."[4] See, ¶ 11 of Ferrer and Altomonte Declarations. By contrast, when this Court granted the renewed motion to certify a collective action under the FLSA in the *Mendoza* case, it did so upon a record far more developed than here. Indeed, one of the named plaintiffs in *Mendoza* (Mary Gamboa) "specifically identified five employees, not named plaintiffs, who told her that they were not paid for all the hours they worked." *Mendoza*, 2008 WL 3399067 at *2, (S.D.N.Y. August 12, 2008)(Harold Baer).

Similar to what this Court observed in *Mendoza*, "[t]here are even contradictions between the affidavits and the allegations in the ... Complaint" justifying denial of the named plaintiffs' motion to certify a collection FLSA action. 2008 WL 938584 at * 3. For example, at paragraph 27 of the Complaint, plaintiffs allege that Ferrer "was typically required to work approximately fifty (50) to seventy (70) hours per week for Defendants." Yet Ferrer's affidavit says nothing like that. All that Ferrer claims is that he was allegedly "required to arrive and start work at approximately 6:30 a.m." and that he allegedly was "frequently ... required to work after 4:30 each night."[5] (Ferrer Dec. at

---

[4] Altomonte's failure to specifically identify by name any potential class members is especially suspect given the fact that he was employed by R&W for over ten years and according to plaintiffs, the number of laborers employed by R&W at any given time is estimated to be only around 40. Altomonte Declaration at ¶ 2 and Plaintiffs' Memorandum of Law at p.3.

[5] As explained below, this allegation is untrue.

6

¶ 5) Ferrer does not state on what dates he allegedly worked after 4:30 p.m. without pay, nor for what period of time after 4:30 p.m. he was required to work. Moreover, the documentary evidence annexed to Ferrer's declaration contradicts any allegation of working anything close to 50 to 70 hours per week, in addition to Ferrer's allegation that he was not compensated for overtime at one and one half of his normal pay rate. The pay stubs annexed to Ferrer's declaration show either that Mr. Ferrer generally worked only 40 hours or less per week at his regular rate of $28 per hour, or that when he did work in excess of 40 hours per week, he was compensated at the over time rate of $42 per hour.[6]

The allegations in the complaint concerning Mr. Altomonte and Altomonte's declaration suffer from the same defects and contradictions. While the complaint alleges that Mr. Altamonte was "typically required to work approximately fifty (50) to seventy (70) hours per week for Defendants" (Complaint at ¶ 28), Altomonte's declaration says nothing of the kind. Using similar boilerplate language as does Ferrer, Altamonte merely claims that he was "required to arrive at work at 7:00 a.m." and was "frequently ... required to work after 4:30 p.m. each night."[7] (Altamonte Dec. at ¶ 5) Like Ferrer, Altomonte does not state on what dates he allegedly worked after 4:30 p.m. without pay, nor for what period of time after 4:30 p.m. he was required to work. Moreover,

---

[6] Unlike Altomonte's declaration, Ferrer's declaration is silent as to whether he is a member of the union (Local 754) that has entered into a collective bargaining agreement ("CBA") with R&W. According to Stephen J. Reich, the Business Representative of Laborers Local 754, although Altomonte is a member of Local 754, Ferrer is not. Declaration of Stephen J. Reich at ¶ 5, annexed to the declaration of Robert Knoebel as Exhibit C. Because he is not a union member, Ferrer does not, because he cannot, state that he is "similarly situated" with other potential plaintiffs who may be members of Local 754, whose wage rates, working hours and conditions are governed by the CBA.

[7] As explained below, this allegation is untrue.

7

the pay stubs annexed to Altomonte's declaration contradict Altomonte's allegations because they reveal that Altomonte worked only 40 hours or less per week at his regular rate of $30.05 per hour.

The declarations of Ferrer and Altomonte are also inadequate to establish the requisite factual nexus with other potential plaintiffs because neither contains any documents concerning the compensation of other potential plaintiffs. *See, Levinson v. Primedia, Inc.*, 2003 WL 22533428, at *2 (S.D.N.Y. 2003)(holding that named plaintiffs did not meet their burden of demonstrating that they were "similarly situated" with potential plaintiffs where documentation attached to affidavits was limited to the affiant's own compensation). And because named plaintiffs must make the "similarly situated" showing with competent evidence, unsupported assertions and conclusory allegations, like those set forth in the Ferrer and Altomonte declarations, will not suffice. *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983). The unsupported conclusory allegations concerning other potential plaintiffs is made worse by the fact that the moving papers here are devoid of an affidavit from even a single potential plaintiff. *See, e.g., Mendoza*, 2008 WL 938584 at *2 (S.D.N.Y. April 7, 2008)(denying without prejudice plaintiffs' motion for FSLA certification where plaintiffs submitted only one affidavit of a non-named plaintiff); *Colozzi v. St. Josephs Hospital Health Center*, 595 F.Supp.2d 200, 209 (N.D.N.Y. 2009)(denying FSLA certification as to sub-group of employees where no affidavits were given from any such employees).

The plaintiffs' memorandum of law, like the complaint and declarations, contains unsupported allegations concerning the extent to which Ferrer and Altomonte are allegedly "similarly situated" with other potential class members. For example, the

plaintiffs' memorandum of law states that "Defendants required that Ferrer and the other construction workers and manual laborers report to work by 6:30 a.m., or shortly thereafter" even though they were "not paid for ... work until 8:00 a.m." (Plaintiffs' MOL at p.4, citing, Ferrer declaration at ¶¶ 5 & 6) Yet Ferrer's declaration at paragraphs 5 and 6 refers strictly to Ferrer (consistently using the pronoun "I") and not to any other past or present employees of R&W.

In sum, the conclusory boilerplate allegations contained in the complaint and the declarations of Ferrer and Altomonte, and repeated in plaintiffs' memorandum of law, are insufficient to establish that the named plaintiffs here are "similarly situated" with any potential plaintiffs to justify certifying a collection action under section 216(b) of the FLSA.

### C. The Ferrer and Altomonte declarations are replete with factually unsupported statements contradicted by the defendants' evidence and are therefore inadequate to establish that they are "similarly situated" with any potential plaintiffs.

While the defendants recognize that the merits of the named plaintiffs' allegations in a FLSA complaint are not normally considered in determining a conditional motion to certify a collective action under 29 U.S.C. § 216(b), the credibility of the named plaintiffs should certainly be a concern to this Court. This is particularly true where, as here, the named plaintiffs have made unsupported or false statements in an attempt to establish that they are "similarly situated" with any potential plaintiffs. As demonstrated by the declarations of Stephen J. Reich, the representative of the union ("Local 754") with which R&W has a collective bargaining agreement ("CBA"), Thomas Welsh, the

9

president of R&W, and Enis Giannone, R&W's bookkeeper, the declarations of Ferrer and Altomonte are replete with unsupported or false statements.

For example, according to Mr. Reich, the CBA requires that employers like R&W pay employees based on a five day work-week and an eight hour day. Declaration of Stephen J. Reich ("Reich Dec.") at ¶ 2, annexed to the Declaration of Robert Knoebel as Exhibit C. Work is to be performed between the hours of 7:00 a.m. and 3:30 p.m. or 8:00 a.m. and 4:30 p.m.. Id. See also, Declaration of Thomas Welsh ("Welsh Dec.") at ¶ 8, annexed to the Declaration of Robert Knoebel as Exhibit A. The CBA also establishes rules for the length of the work day, procedures to be followed for overtime, the rate of pay for regular hours and for overtime and other benefits that the employers are obligated to provide to its employees. Reich Dec. at ¶ 2; Declaration of Enis Giannone ("Giannone Dec.") at ¶ 2, annexed to the Declaration of Robert Knoebel as Exhibit B. Contrary to the allegations of Ferrer and Altomonte, employees of R&W work from 8:00 a.m. to 4:30 p.m., with ½ hour of time allotted for lunch. Id. at 3. Welsh Dec. at ¶ 8, 12.

As part of Local 754's administration of the CBA, the union regularly conducts audits of R&W's payroll and payroll practices. Reich Dec. at 6, Welsh Dec. at 4. Union representatives also regularly speak with members in order to determine whether the requirements of the CBA regarding wages, hours and overtime are being adhered to. Reich Dec. at ¶ 6. The audits conducted by Local 754 of the payroll records of R&W have found to be in compliance with the CBA and there have been no violations of the CBA by R&W concerning unpaid overtime. Id. at ¶ 7. Welsh Dec. at ¶ 13.

According to Thomas Welsh, neither Ferrer, nor Altomonte, nor any of R&W employees, were required to report to work at 6:30 a.m. or 7:00 a.m. or at any time prior

10

to their scheduled starting time. Welsh Dec. at ¶ 8. If Ferrer or Altomonte did appear for work prior to 8:00 a.m., they did so of their own choosing, not at the request of R&W, and did not engage in any work for the benefit of R&W prior to 8:00 a.m. Id. See, *Scott v. City of New York*, 592 F.Supp.2d 386 (S.D.N.Y. 2008)("'Work' under FLSA is exertion or loss of an employee's time that is (1) controlled or required by an employer, (2) pursued necessarily and primarily for the employer's benefit, and (3) if performed outside the scheduled work time, an integral and indispensable part of the employee's principal activities."); *Johnson v. RGIS Inventory Specialists*, 554 F.Supp.2d 693 (E.D. Tex. 2007)(Employee's wait time stemming from her early arrival at the meet site was not compensable under Portal-to-Portal Act where employee did not perform any principal activities at the meet site and could forego waiting at the meet site entirely by choosing not to assemble there.) Like all R&W employees, both Ferrer and Altomonte were entitled to, and in fact did take, a ½ hour lunch break. Id. at ¶ 12.

Mr. Welsh's affidavit also demonstrates that the speculative allegations of Ferrer and Altomonte that Debra Welsh allegedly altered time records submitted by employees by reducing the number of hours worked is completely false. According to Mr. Welsh, Debra Welsh was not responsible for payroll and has not been actively employed by R&W in the last four years. Welsh Dec. at ¶ 5. Indeed, as Ms. Giannone explains in her declaration, she was the R&R bookkeeper responsible for administering employees work records and preparing weekly payroll records. Giannone Dec. at ¶ 1. Thomas Welsh also confirms that R&W employees were not required to work past 4:30 p.m. and that on most days, employees were out of the yard by 3:30 p.m. even though they would get paid for the full eight hours. Welsh Dec. at ¶ 9.

Concerning Mr. Altomonte's allegation that he was not paid prevailing wages when he worked on government contracts (Altomonte Dec. at par. 9), Mr. Welsh confirms that over the last two years, R&W only had two prevailing wage contract jobs. Id. at ¶ 11. While Mr. Altomonte worked on one of those jobs for two weeks, he was in fact paid at the proper rate. Id. Mr. Ferrer was never an active employee on either of those two prevailing wage contract jobs. Id. Although Mr. Altomonte was classified as a laborer under the CBA, he was actually paid at the higher rate of $30.05 per hour applicable for foremen. Id. at ¶ 6.

In respect of overtime, all foremen are instructed that overtime is only authorized on emergency work, such as repairs to gas lines. Welsh Dec. at ¶ 10. Neither Altomonte nor Ferrer did regular work on gas jobs, and if they did, and an emergency arose, they were paid overtime. Id. According to payroll records, only Mr. Ferrer worked overtime and he was paid at one and one half times the rate of his normal pay for any overtime he worked. Giannone Dec. at ¶ 6. Neither Ferrer nor Altomonte ever complained to Ms. Giannone that they were owed back pay for any overtime. Id. at ¶ 8. And neither Ferrer nor Altomonte made any complaints or filed any grievances under the CBA to address claims of unpaid overtime or any other alleged violations of the CBA. Reich Dec. at ¶ 5.[8]

In sum, the affidavits of Reich, Welsh, and Giannone demonstrate that most, if not all, of the allegations made by Ferrer and Altomonte lack merit, not only in respect of their own work hours and pay, but also concerning the work hours and pay of any other past or present employees of R&W. Given such evidence, the named plaintiffs here have not, and cannot, satisfy their burden of establishing that there are other potential plaintiffs with whom they are "similarly situated."

---

[8] Of course, as explained above, Mr. Ferrer was not a member of Local 754.

**D. If the court grants certification pursuant to 29 U.S.C. § 216(b), the terms of any notice should be mutually agreed upon by the parties and approved by the Court and any preliminary discovery permitted for notice purposes should be limited.**

The plaintiffs request an order from this Court directing that notice be issued to all potential plaintiffs who are current employees of R&W, as well as those persons previously employed by R&W for the past three years (the "Collective Action Members") because Ferrer and Altomonte are allegedly "similarly situated" to such Collective Action Members. For each of the reasons set forth above, because Ferrer and Altomonte have not established they are "similarly situated" with the Collective Action Members, notice would not be appropriate here. However, if the Court grants plaintiffs' request for certification pursuant to 29 U.S.C. § 216(b), it should order the parties to meet and confer to devise a fair and accurate notice agreeable to the parties. *Tucker v. Labor Leasing, Inc.*, 872 F.Supp. 941, 950 (M.D. Fla. 1994)(granting notice and "directing the parties to meet and agree to a form of notice."); *Carter v. Newsday, Inc.*, 76 F.R.D. 9, 16 (E.D.N.Y. 1976)(granting class certification and notice, imposing the costs of such notice on plaintiffs, and ordering the parties to confer regarding the nature and form of notice to the class).

To the extent that plaintiffs request for discovery is granted, it should be limited to the names and last known addresses of the Collective Action Members. Because plaintiffs have not demonstrated any need for additional information in the form of telephone numbers and personal email addresses, defendants should not be obligated to produce such information. *Summa v. Hofstra University*, 2008 WL 3852160 at *7

(August 14, 2008 E.D.N.Y.)(ordering defendant to produce the names and last known addresses of individuals employed by defendant university as graduate assistants within the last 3 years, but denying plaintiffs' request for e-mail addresses, social security numbers and dates of employment of each person; "plaintiff provides no justification regarding her request for additional information."). For similar reasons, the plaintiffs' request that defendants post any court-ordered notice and opt-in consent forms in all of its facilities should be denied. Plaintiffs have not established that mailing of notice and opt-in consent forms would not serve as adequate notice to any current employees of R&W. *See, e.g., Sexton v. Franklin First Financial, Ltd.*, 2009 WL 1706535 (June 16, 2009, S.D.N.Y.)(production of notice related discovery should be "neither unduly burdensome nor disruptive to defendants' business operations.").

## Conclusion

For the reasons set forth above, this Court should deny plaintiffs' request to conditionally certify this action as a collective action under section 216(b) of the FLSA. If the Court grants plaintiffs' request for certification, it should order the parties to meet and confer to devise a fair and accurate notice agreeable to the parties, subject to Court approval. To the extent that plaintiffs' request for notice related discovery is granted, it should be limited to the names and last known addresses of the Collective Action Members. Plaintiffs' request that defendants post any court-ordered notice and opt-in consent forms in all of its facilities should be denied, because they have not established that mailing of such forms would not serve as adequate notice to any current employees of R&W.

Dated: August 12, 2009

Dorfman Knoebel Conway & Fury, LLP

By: _____
Robert S. Knoebel (RSK 7058)
Attorneys for Defendants
51 North Broadway
Nyack, New York 10960
(845) 353-3500

Saretsky, Katz, Dranoff & Glass, L.L.P.

By: _____
Eric Dranoff (ED 7892)
Co-Counsel for Defendants
475 Park Avenue South
New York, New York 10016
(212) 973-9797